IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LISA REYNOLDS, as Administrator of the Estate of LEONARD SEDDEN, deceased, on behalf of said decedent's heirs-at-law and next of kin and in her own behalf** : : : : : : **Plaintiffs,** : : v. : : **SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,** : : **Defendant.** | **CIVIL ACTION** **NO. 12-1008** |

# MEMORANDUM

**Tucker, J.**                                                                                    **July _____ , 2013**

Presently before the Court is Defendant's, Southeastern Pennsylvania Transportation Authority ("SEPTA"), Motion to Dismiss (Doc. 4), Plaintiff's, Lisa Reynolds ("Reynolds"), Response in Opposition thereto (Doc. 7), and Defendant's Reply (Doc. 11). For the reasons that follow, Defendant's motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from the death of Leonard Sedden ("Mr. Sedden") while he was aboard a SEPTA bus. On April 11, 2010, at approximately 4:00 a.m., Mr. Sedden was a lawful and proper passenger aboard a SEPTA "night owl" bus traveling from the 69th Street Transportation Center to the Frankford Transportation Center in Philadelphia, Pennsylvania when the SEPTA driver noticed Mr. Sedden lying in urine, covered in drool and largely unresponsive. Shortly thereafter, the bus driver contacted SEPTA's control station to inform a dispatcher of Mr. Sedden's condition. The dispatcher instructed the driver to proceed with her route. During the route, the bus was stopped at 15th and Market Street, where a SEPTA supervisor boarded the bus and observed Mr. Sedden's

condition. The supervisor observed Mr. Sedden breathing and sitting upright and instructed the driver to proceed with her regular schedule. At approximately 5:30 a.m., the bus arrived at Frankford Transportation Center where SEPTA police pronounced Mr. Sedden dead. (Compl. ¶¶ 3-8.)

Plaintiff, Lisa Reynolds, as the Administrator of Decedent's Estate and on behalf of Decedent's heirs and next of kin and on her own behalf, commenced this action pursuant to 42 U.S.C. § 1983, on February 3, 2012, in the Philadelphia Court of Common Pleas.[1] On February 27, 2012, Defendant removed the action to this Court on the basis of federal question jurisdiction. Defendant filed this Motion to Dismiss on March 5, 2012. Plaintiff filed a Response to the Defendant's Motion to Dismiss on March 20, 2012. Thereafter, Defendant filed a Reply brief on June 28, 2012. The Court will now address Defendant's pending Motion to Dismiss.

## II.     STANDARD OF REVIEW

In considering a 12(b)(6) motion to dismiss for failure to state a claim the Court should consider a two-part analysis. First, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC*, 578 F.3d 203, 210-11 (3d Cir. 2009), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Next, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211, quoting *Iqbal*, 556 U.S. at 679. To be "plausible," a claimant's factual allegations must "permit the court to infer more than the mere possibility of misconduct." *Id*. That is, "a complaint must do more than allege the plaintiff's entitlement to relief," it "has to 'show' such an entitlement with its facts." *Id*. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. *Id*.

---

[1] Plaintiff also asserts several state law claims including negligence, wrongful death and a survival action. She requests damages in excess of $50,000 in addition to punitive damages.

2

## III. DISCUSSION

### A. Plaintiff's Claim for Relief Pursuant to 42 U.S.C. §1983

A claim pursuant to 42 U.S.C. §1983 provides relief for the violation of rights secured by the United States Constitution and other federal laws. *Kopec v. Tate*, 361 F. 3d 772, 775-76 (3d Cir. 2004). Section 1983 provides, in relevant part, the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit inequity, or other proper proceeding for redress [.] 42 U.S.C.A. §1983.

To successfully establish a claim under Section 1983, a plaintiff must show: 1) the deprivation of a right secured by the Constitution or other federal law; and 2) that the alleged violation was committed by a person acting under color of state law. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). In support of their §1983 claim Plaintiff advances three theories of liability. First, Plaintiff alleges that SEPTA maintained a policy or custom of continuing services while a passenger was in need of medical attention. Second, Plaintiff alleges SEPTA failed to render emergency services for Mr. Sedden. Lastly, Plaintiff alleges a "state-created" danger as a result of SEPTA's policy to continue service regardless of a passenger's medical emergency. (Doc. 7 at 5). While SEPTA argues Mr. Sedden was not deprived of a constitutional right, the parties do not dispute that SEPTA and its agents were acting under color of state law.

#### 1. SEPTA's Policy of Declining to Provide Emergency Services to a Passenger

The Supreme Court has held that §1983 applies to municipalities and other local government units. *See Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). To establish a § 1983 claim against a municipality a plaintiff must identify either a "policy statement, ordinance, regulation, or

decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the government's official decision-making channels." *Id*. at 659. Next, the plaintiff must identify a direct causal link between the actions of the municipality and the deprivation of federal rights. *Board of the Cnty Comm'rs of Bryan Cnty v. Brown*, 520 U.S. 397, 404 (1997); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (holding that plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the alleged constitutional deprivation) (internal citation and quotations omitted).

Although Plaintiff meets the first prong of a *Monell* claim by sufficiently pleading SEPTA's policy or custom of not disrupting services to provide medical care to passengers, Plaintiff has failed to demonstrate a causal link between SEPTA's alleged policy and deprivation of a constitutional right. In the Response to the Defendant's Motion to Dismiss, Plaintiff argues that in the Third Circuit a causal link can be demonstrated by showing that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the [plaintiff's] injury." (Doc. 7 at 12) (quoting *Bielevicz*, 915 F.2d at 851) (internal quotations omitted). More specifically, Plaintiff argues "[a] sufficiently close causal link between…a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Id*.

To establish the casual connection, Plaintiff claims that SEPTA was on notice of the alleged danger of not disturbing services to provide medical care to passengers prior to Mr. Sedden's death because a similar situation occurred on a SEPTA service a few months earlier. (Doc. 7 at 12.) The

4

facts in *Yeremian v. Southeastern Pennsylvania Transportation Authority,* Civil Action No. 11-06842, 2012 WL 440635, (E.D. Pa. February 7, 2012), are strikingly similar to the facts of the present case. In *Yeremian,* Peter J. Yeremian ("the Decedent") was riding on SEPTA's Route 100 train on January 29, 2010 when a train operator noticed the Decedent was slouched in his seat. *Yeremian*, 2012 WL 440635 at *1. After a failed attempt to awake the Decedent the train operator contacted a SEPTA dispatcher for instructions on how to respond to the situation. *Id*. The operator was instructed by the dispatcher to complete his regular route and at the end of the route SEPTA transit police would handle the matter. *Id*. Once the operator had met SEPTA police after the conclusion of his route, it was determined that the Decedent died aboard the train. *Id*. Like the present case, the plaintiff in *Yeremian* alleged a deprivation of the Decedent's constitutional rights pursuant to §1983. *Id*. However, in *Yeremian* the Honorable Ronald J. Buckwalter granted defendant's Motion to Dismiss holding that there was no constitutional violation upon which Plaintiff's §1983 claim could be established. *Id* at 12.

However, Plaintiff's reliance on *Yeremian* as evidence of SEPTA's knowledge of "similar unlawful conduct" is misplaced. As clearly outlined in Judge Buckwalter's opinion it was not unlawful conduct for SEPTA to continue the train route without rendering emergency services to the Decedent because SEPTA does not have a duty to administer such services. *Id*. at 6. Because the court in *Yeremian* held that the SEPTA's conduct was not unlawful, Plaintiff fails to demonstrate that SEPTA was aware of similar unlawful conduct and therefore fails to establish the casual link between SEPTA's policy and a deprivation of a constitutional right as required by *Monell*.

   **2. SEPTA's Duty to Render Emergency Services**

Next, Plaintiff alleges that SEPTA's failure to provide emergency services to Mr. Sedden was a deprivation of "his liberty interest in his bodily integrity and his interest in life" (Comp. ¶23.)

5

According to Plaintiff, Mr. Sedden's death was the result of SEPTA's failure to have policies in place to recognize, respond, and contact appropriate persons in medical emergencies as well as SEPTA's policy to continue the bus service regardless of a medical emergency. (Compl. ¶21.)

However, the Supreme Court clearly articulated that the Due Process Clause does not require a state to administer aid when it would be necessary to secure life, liberty, or property interests. *DeShaney v. Winnebago Cnty Dept. of Social Services*, 489 U.S. 189, 196 (1989). Similarly, it is evident in the Third Circuit that the Due Process clause does not guarantee a "federal constitutional right to rescue services, competent or otherwise." *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003); *see also Badway v. City of Phila.*, 415 Fed. App'x 420, 421 (3d Cir. 2011). The death of Mr. Sedden was a tragic event and the Court sympathizes with his family for their loss, however, despite this unfortunate event SEPTA did not deprive the Mr. Sedden of a constitutional right. SEPTA was under no obligation to provide rescue services to Mr. Sedden therefore SEPTA's lack of action in this matter did not rise to a constitutional violation under §1983.

### 3. The State-Created Danger Theory

Lastly, Plaintiff alleges a constitutional violation based on the "state-created danger" theory. The "state-created danger" theory serves as an exception to the general rule that the Due Process Clause does not require states to render aid to their citizens. *Badway*, 415 Fed. App'x at 421. A state actor will be liable under this theory if the plaintiff is able to satisfy the following four-part test:

1. "'the harm ultimately caused was foreseeable and fairly direct;'
2. a state actor acted with a degree of culpability that shocks the conscience;
3. a relationship between the state and the plaintiff existed such that 'the plaintiff was a foreseeable victim of the defendant's acts,' or a 'member of a discrete class of persons subjected to the potential harm brought about by the state's actions,' as opposed to a member of the public in general; and

4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations omitted).

A plaintiff must establish each prong of the four-part test, failure to do so will preclude the plaintiff from prevailing under this theory. *Sanford v. Stiles*, 456 F.3d 298, 311 (3d Cir. 2006) (holding that the claim could not proceed because the plaintiff failed to satisfy one element of the state-created danger theory); *see also Smith v. Sch. Dist. Phila.*, No. Civ.A.07-2080, 2009 WL 667455, at *3 (E.D. Pa. Mar. 10, 2009)(holding that a plaintiff's failure to satisfy any of the four elements defeats the state-created danger claim) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 914 (3d Cir. 1997). A state-created danger is "predicated upon the states' *affirmative acts* which work to the plaintiffs' detriment in terms of exposure to danger…It is the misuse of state authority, rather than a failure to use it that can violate the due process clause. " *Bright*, 443 F.3d at 282 (emphasis in original).

In the instant case Plaintiff fails to satisfy the fourth prong of the "state-created danger" claim, the state actor used his authority to create an opportunity for danger that otherwise would not have existed. To successfully establish the fourth prong the Plaintiff must establish three conditions: (1) the state actor exercised his or her authority, (2) the state actor undertook an affirmative action, and (3) this action created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all. *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007) (citing *Bright*, 443 F. 3d at 281-2).

The first condition simply requires the Court to determine whether the state actor exercised their authority and it is clearly met in the present case. The Third Circuit has held that "[t]he 'authority' language is simply a reflection of the 'state actor' requirement [.]" *Ye*, 484 F.3d at 640.

As discussed above, SEPTA is a state entity for § 1983 purposes. *See Pokalsky v. Se. Pa. Transp. Auth.*, No. Civ. A. 02-323, 2002 WL 1998175, *2 n.2 (E.D.Pa. Aug. 28, 2002) (citing *Bolden v. Se. Pa. Transp. Auth.,* 953 F.2d 807, 817 (3d Cir. 1991)).

Next, this Court must determine whether the state actor undertook an affirmative action. *Ye*, 484 F.3d at 639. "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restrain of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause [.]" *DeShaney*, 489 U.S. at 200 (citations omitted). Further, it is well established that state actors "cannot use their authority to create such an opportunity for danger…by failing to act." *Peet v. Beard*, No. Civ. A. 3:10-482, 2011 WL718723, at *9 (M.D. Pa. Jan. 25, 2011)(internal quotations and citations omitted).

Here, Plaintiff alleges that SEPTA's policy or custom of not disrupting services to provide medical care to passengers was an affirmative act that created a danger to Sedden. While the court in *Yeremian* clearly held that SEPTA's failure to act did not constitute an affirmative act, Plaintiff attempts to distinguish the opinion in *Yeremian* from the present case by arguing that the court in *Yeremian* only determined that SEPTA's failure to provide medical services to Mr. Yeremian did not constitute an affirmative act and not whether SEPTA's policies and customs could constitute an affirmative act as Plaintiff alleges here. Plaintiff's argument is baseless, the policy or custom at issue is SEPTA's failure to disrupt services to provide medical care therefore the *Yeremian* court did determine that SEPTA's policy or custom was not an affirmative act. Similar to the plaintiff in *Yeremian*, Plaintiff here is unable to identify an affirmative act by SEPTA that created a danger to Sedden as required by *Ye*.

Lastly, the final condition that this Court must consider for the fourth element of the state-created danger theory is whether the state actor's affirmative act created a danger to the citizen or rendered the citizen more vulnerable to the danger than had the state not acted at all. *Ye*, 484 F.3d at 639. While the court does not need to consider this condition as the Plaintiff failed to establish an affirmative act taken by SEPTA, the Court will briefly address this last condition. There is nothing in the complaint to suggest that anything occurred on the SEPTA bus that caused Mr. Sedden's condition. From the complaint it is alleged that the driver noticed Mr. Sedden "lying in his own urine, was covered in drool and was largely unresponsive." (Compl. at ¶5) There is nothing in the complaint to suggest that SEPTA created this condition or made Mr. Sedden more vulnerable to the danger as the danger existed before the bus driver even noticed Mr. Sedden. Therefore Plaintiff fails to establish the last condition necessary for the fourth element of the state-created danger.

A reasonable reading of the complaint does not entitle Plaintiff to relief under §1983. Given the allegations in the complaint, the Court does not find there has been a constitutional violation under any of theories Plaintiff has set forth in the response to the Motion to Dismiss. Therefore, for the reasons discussed above Plaintiff's §1983 claim fails as a matter of law.

**B. State Law Claims**

In addition to the federal §1983 claim, Plaintiff's complaint contains state law claims. Because the only claim which the Court had original jurisdiction has been dismissed, the Court has limited discretion as to whether or not certain claims arising under supplemental jurisdiction should remain in federal court. *See Ohad Assoc. v. Twp. of Marlboro*, No. Civ. A. 10-2183, 2010 WL 3326674, at *5 (D.N.J. Aug. 23, 2010). Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if…(3) the district court has dismissed all claims over which it has original jurisdiction[.]" The Third

Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Ashton v. City of Uniontown*, 459 F. App'x 185, 191 (3d Cir. 2012) (quoting *Borough of W. Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995).

Here, federal jurisdiction is based upon Plaintiff's §1983 claim, because this claim is dismissed there is no viable federal claim remaining in Plaintiff's complaint. Plaintiff has not alleged any facts to demonstrate judicial economy, convenience and fairness to the parties that support litigating the remaining state law claims in federal court. *Id*. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims.

## IV. CONCLUSION

For the foregoing reason, Plaintiff's complaint fails to adequately state a claim upon which relief can be granted under 42 U.S.C. §1983. Defendant's Motion to Dismiss is granted in regards to Plaintiff's federal §1983 claims however the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**BY THE COURT:**
**/s/ Petrese B. Tucker**

_____

**Hon. Petrese B. Tucker, C.J.**